UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-23100-CIV-ROSENBAUM

NANCY K. NEIDICH,
standing Chapter 13 Trustee,

    Appellant,

v.

CLAUDIO LORENZO and
GUADALUPE LORENZO,

    Appellees.
_____/

In re:

CLAUDIO LORENZO and
GUADALUPE LORENZO

    Debtors.
_____/

## OPINION AND ORDER

This matter is before the Court upon the Brief of Appellant Nancy K. Neidich [ECF No. 5]. The Court has considered the brief, all supporting and opposing filings, and the record in this case. For the reasons set forth below, the Court affirms the Bankruptcy Court's determination that Debtors could use the 2013 IRS standards when modifying their Chapter 13 Plan.

### *BACKGROUND*

On August 31, 2009, Claudio and Guadalupe Lorenzo jointly filed for Chapter 13 bankruptcy in this District. *In re Lorenzo*, No. 09-28532, ECF No. 1 (Bankr. S.D. Fla. Aug. 31, 2009). That same day, Debtors filed their Current-Monthly-Income ("CMI") Form, also known as a B22C Form, used

to calculate Debtors' disposable income and the applicable commitment period for Debtors' Chapter 13 Plan. *See* ECF No. 5 at 5. Debtors' First Amended Plan, based on this CMI Form, was approved by the Bankruptcy Court with no opposition. *Lorenzo*, No. 09-28532, ECF No. 67 (Bankr. S.D. Fla. Aug. 6, 2010). The First Amended Plan provided that Debtors would pay 100% of all allowed unsecured claims in the amount of $147,142.80. *Lorenzo*, No. 09-28532, ECF Nos. 22; 113 (Bankr. S.D. Fla.).

One year after confirmation of the plan, Appellee Nancy K. Neidich, the Chapter 13 Trustee, filed a Motion to Dismiss because Debtors were not paying back 100% of their unsecured claims. *Lorenzo*, No. 09-28532, ECF Nos. 71; 84 (Bankr. S.D. Fla.). Debtors filed a Motion to Modify their confirmed plan, and the Bankruptcy Court approved their First Modified Plan on October 3, 2012. *Lorenzo*, No. 09-28532, ECF Nos. 87; 94 (Bankr. S.D. Fla.). The First Modified Plan still provided for the 100% payment of all allowed unsecured claims, but because the Bankruptcy Court sustained Debtors' objections to certain claims, the amount of allowable unsecured claims was reduced to $141,972.32. *See Lorenzo*, No. 09-28532, ECF Nos. 73; 79 (Bankr. S.D. Fla.).

Debtors' income substantially decreased after the confirmation of these plans. ECF No. 11 at 1. So in 2013, Debtors filed a new "Pro-Forma" CMI Form and moved to modify the plan based on the new CMI calculations. *Lorenzo*, No. 09-28532, ECF Nos. 104; 109 (Bankr. S.D. Fla.). The Pro-Forma CMI Form used the 2013 standard Internal Revenue Service ("IRS") expenses to calculate disposable income instead of the 2009 standards used at the time of the filing of Debtors' case.[1] ECF No. 5 at 2-3. Debtors' Third Modified Plan, based on the Pro-Forma CMI Form, no

---

[1] While Debtors' original CMI Form claimed $5,031.60 in total expenses under the 2009 standards, Debtors' Pro-Forma CMI Form claimed $5,152.00 in total expenses under the 2013 standards. *See Lorenzo*, No. 09-28532, ECF Nos. 3 at 5; 109 at 6 (Bankr. S.D. Fla.).

longer sought to pay 100% of the unsecured claims and reduced the payment to unsecured creditors to $89,599.60. *Lorenzo*, No. 09-28532, ECF No. 110 (Bankr. S.D. Fla. Apr. 10, 2013).

The Trustee objected to Debtors' modification of their CMI Form because, according to the Trustee, the 2009 IRS standards from the date of the filing of the bankruptcy petition should apply, instead of the 2013 standards. *Lorenzo*, No. 09-28532, ECF No. 112 (Bankr. S.D. Fla. Apr. 29, 2013). But on May 9, 2013, after a hearing on the matter, the Bankruptcy Court determined that "there is no prohibition against filing a new, amended or revised Pro-Forma CMI using the IRS standard in effect at the time of the filing of the Pro-Forma CMI when seeking to modify a plan" and allowed Debtors to use the 2013 standards. *Lorenzo*, No. 09-28532, ECF No. 113 (Bankr. S.D. Fla. May 10, 2013). The Bankruptcy Court nevertheless sustained another of the Trustee's objections to the Pro-Forma CMI not relevant to this appeal and, therefore, denied Debtors' Motion to Modify without prejudice to renew. *Id.*

On May 25, 2013, the Trustee filed a Motion to Clarify, essentially seeking reconsideration of the Bankruptcy Court's determination that Debtors could use the 2013 IRS standards. *Lorenzo*, No. 09-28532, ECF No. 114 (Bankr. S.D. Fla. May 25, 2013). But on June 6, 2013, after the Debtors had failed to renew their Motion to Modify, the Bankruptcy Court dismissed the case and, on June 11, 2013, denied as moot the Trustee's Motion to Clarify. *Lorenzo*, No. 09-28532, ECF Nos. 116; 118 (Bankr. S.D. Fla.). The Trustee now appeals to this Court the Bankruptcy Court's May 9, 2013, Order that determined that Debtors could use the 2013 standards; the June 6, 2013, Order dismissing the case; and the June 11, 2013, Order denying as moot the Motion to Clarify.[2] ECF No. 1.

---

[2] After the Trustee's appeal of these Orders, the Bankruptcy Court granted Debtors' Motion to Reinstate Case and approved their Fifth Modified Plan. *See Lorenzo*, No. 09-28532, ECF No. 133; 134 (Bankr. S.D. Fla.).

## *JURISDICTION*

Federal courts are courts of limited jurisdiction. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). With regard to appeals from bankruptcy courts, district courts enjoy jurisdiction over only three types of orders: (1) final orders, as described in 28 U.S.C. § 158(a)(1); (2) interlocutory appeals issued under 11 U.S.C. § 1121(d), as described in 28 U.S.C. § 158(a)(2); and, (3) with leave of the court, other interlocutory orders, as described in 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. Pro. 8001(b). *Tobkin v. Calderin*, 2012 WL 3609867, at *1 (S.D. Fla. Aug. 22, 2012). As this Court has explained, district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees." *Id.* at *1-*2; 28 U.S.C. § 158(a)(1).

"[A] final order in a bankruptcy proceeding is one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment." *In re Culton*, 111 F.3d 92, 93 (11th Cir. 1997) (citing *In re Tidewater Group, Inc.*, 734 F.2d 794, 795-96 (11th Cir. 1984)). Because the Bankruptcy Court's denial of the Motion to Clarify ended the litigation of the issue of the correct IRS standard on the merits, the Trustee here appeals a final order.

## *STANDARD OF REVIEW*

Bankruptcy courts are governed by the Federal Rules of Bankruptcy Procedure. Under Rule 8013, Fed. R. Bankr. P., a district court reviews the factual findings of a bankruptcy court for clear error. As for the conclusions of law of the bankruptcy court and the application of the law to the particular facts of the case, a district court must conduct a *de novo* review. *See In re Feingold*, 474 B.R. 293, 294 (S.D. Fla. 2012) (citing *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009); *In re Club Assocs.*, 951 F.2d 1223, 1228-29 (11th Cir.1992)) ("The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*").

## *DISCUSSION*

A bankruptcy court shall confirm a plan if it meets the nine requirements of 11 U.S.C. § 1325(a), "[e]xcept as provided in [§ 1325(b)]." 11 U.S.C. § 1325(a). Section 1325(b), in turn, prevents a bankruptcy court from approving a plan "[i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan" unless

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1).

Amendments to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 119 Stat. 23 ("BAPCPA"), affect debtors who choose, under § 1325(b)(1)(B), to apply all of their projected disposable income to make payments to unsecured creditors during the course of the applicable commitment period. As the Eleventh Circuit explains,

> The primary change to Chapter 13 bankruptcy created by BAPCPA was the creation of two classifications of debtors, above median income debtors and below median income debtors. BAPCPA then distinguished above and below median income debtors on the basis of: the length of their "applicable commitment periods," 11 U.S.C. § 1325(b)(4); the calculation of disposable income, 11 U.S.C. § 1325(b)(3); and the determination of the maximum bankruptcy period, 11 U.S.C. § 1322(d).

*In re Tennyson*, 611 F.3d 873, 875 n.1 (11th Cir. 2010). The commitment period for above-median-income debtors, for example, usually cannot be less than five years, while the commitment period for below-median income debtors is usually three years. 11 U.S.C. § 1325(b)(4)(A). And, as relevant to this appeal, § 1325(b)(3) provides that above-median-income debtors, but not below-median-

income debtors, must follow the requirements of 11 U.S.C. §§ 707(b)(2)(A) and (B) when determining the "amounts reasonably necessary to be expended" that can be deducted from the debtor's monthly income in order to calculate the amount of disposable income. 11 U.S.C. § 1325(b)(3).

Under § 707(b)(2)(A), an above-median-income debtor's monthly expenses "shall be the debtor's applicable monthly expense amounts specified under the [IRS standards] . . . as in effect on the date of the order for relief," *i.e.*, the date of the commencement of a voluntary bankruptcy case. 11 U.S.C.A. §§ 301(b), 707(b)(2)(A)(ii)(I). Thus, when completing a CMI Form to determine projected disposable income in order to confirm a plan, an above-median-income debtor must use the IRS standards for monthly expenses in effect on the date of the commencement of the bankruptcy case pursuant to § 707(b)(2)(A).

The parties both agree that Debtors here are above-median-income debtors. ECF No. 5 at 5. But the parties disagree about whether the requirements of § 707(b)(2)(A) apply only when a debtor's plan is first confirmed or whether they also apply when a debtor modifies her plan after confirmation.

A bankruptcy court may allow the modification of a plan after confirmation under 11 U.S.C. § 1329. That section provides,

> At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to–
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> >
> > . . . .

11 U.S.C. § 1329(a). Section 1329(b)(1) expressly provides, "Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section." *Id.* § 1329(b)(1).

The Bankruptcy Court here found that the requirements of § 707(b)(2)(A) do not apply to plan modifications under § 1329 because § 1329, by its terms, incorporates § 1325(a) but not § 1325(b), and § 707(b)(2)(A), in turn, is incorporated in § 1325(b) only and not § 1325(a). ECF No. 1 at 5.

As noted in *In re Davis*, 439 B.R. 863 (Bankr. N.D. Ill. 2010), a plain reading of the Bankruptcy Code supports the Bankruptcy Court's determination. *Id.* at 866-69. Section 1325(b) comes into effect only when an applicable party "objects to the confirmation of the plan." 11 U.S.C. § 1325(b)(1). Modification of a plan is not a type of confirmation but is, instead, a process that takes place after confirmation. *See id.* § 1329(a) ("At any time after confirmation of the plan . . . the plan may be modified"). Thus, § 1325(b), by its own terms, is limited in applicability to plan confirmation only and not to any ensuing modifications of the plan.

And, under the maxim of *expressio unius est exclusio alterius*, Congress's specification of only four provisions that apply to § 1329 implicitly excludes other provisions. *Davis*, 439 B.R. at 867 (collecting cases); *see also TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-617 (1980)) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."). "Section 1329(b) expressly applies certain specific Code sections to plan modifications but does not apply § 1325(b). Period." *In re Sunahara*, 326 B.R. 768, 781 (B.A.P. 9th Cir. 2005).

Finally, no absurdity results if § 1325(b) does not apply to plan modification. As the *Davis* Court notes, Chapter 13 was adopted as part of the Bankruptcy Code in 1978, but § 1325(b) was added to the Code in 1984.[3] *Davis*, 439 B.R. at 868. In the interim, bankruptcy courts had "no difficulty" in denying confirmation of Chapter 13 plans that proposed unreasonably low payments or short durations under § 1325(a)(3)'s requirement that a bankruptcy court confirm a plan only if it is "proposed in good faith." *Id.* Thus, courts today can still use the good-faith requirement of § 1325(a)(3) to deny modification of a plan if it is unreasonable in length or payment. *See Sunahara*, 326 B.R. at 781.

The Trustee, however, argues that § 707(b)(2)(A) does apply to modifications under § 1329 by virtue of § 1325(a)'s cross-reference to § 1325(b). *See* 11. U.S.C. § 1325(a) ("Except as provided in subsection (b), the court shall confirm a plan if" the nine requirements are met). This argument is unavailing. Congress expressly enumerated that §§ 1322(a), 1322(b), 1323(c), and the requirements of § 1325(a) would apply to plan modifications. *Id.* § 1329(b)(1). It could have expressly provided that § 1325(b) applies as well, but it chose not to, and this Court must afford Congress's choice weight.

And, significantly, Congress decided to specify that only the *requirements* of § 1325(a) apply to plan modification. Under § 1325(a), a bankruptcy court "shall" confirm a plan if nine necessary conditions are met. 11 U.S.C. § 1325(a). Section 1325(b), meanwhile, applies only in instances where the trustee or holder of an allowable unsecured claim objects to the plan. *Id.* § 1325(b)(1). In

---

[3] Section 1329(b)(1)'s specification of four provisions applicable to plan modification is original to the 1978 version of Chapter 13, and Congress chose not to amend these four provisions upon the addition of § 1325(b) to the Code in 1984. *See* Pub. L. 95-958, § 1329, 92 Stat. 2549 (1978); Pub. L. 98-353, §§ 317, 319, 533, 98 Stat. 333 (1984).

such a case, the debtor may elect either to pay 100% of the unsecured claims or, instead, to apply all projected disposable income over the course of the commitment period to pay unsecured claims. *Id.* A bankruptcy court "may not approve the plan unless" either of these two conditions are met. *Id.*

Section 1325(b), which is only referenced in § 1325(a) as an exception, cannot be considered a "requirement of § 1325(a)," and the conditional nature of the provisions of § 1325(b) further suggests that § 1325(b) is not a requirement of § 1325(a). *See Davis*, 439 B.R. at 867 ("Rather than a prerequisite for confirmation, § 1325(b) is an exception to the confirmation that § 1325(a) otherwise mandates. Section 1325(a) states that courts must confirm a plan that meets its nine requirements; § 1325(b) has the potential for preventing that result. Nothing in § 1325(b) is required for confirmation. No party is required to object to confirmation under that subsection, and even if grounds for objection are present, a plan may be confirmed if the objection is not made.").

Furthermore, as noted above, § 1325(a), in isolation, applies only to the confirmation of the plan. It therefore makes sense for Congress to apply the "requirements of § 1325(a)" to plan modification instead of merely applying "§ 1325(a)" to plan modification because § 1325(a) dictates when a bankruptcy court must confirm a plan only and does not, by itself, apply to plan modification. Thus, applying § 1325(a)—rather than the requirements of § 1325(a)—to post-confirmation modification under § 1329 would have no import because the terms of § 1325(a) apply to confirmation only. Congress was presumably aware that § 1325(a) applies only to plan confirmation, and thus chose to apply "the requirements of § 1325(a)" to § 1329 to avoid the absurd result of the meaningless application of § 1325(a) to plan modification. It follows that Congress was also aware that §1325(b) applies only when a party with standing objects to confirmation—not modification—but Congress chose to let § 1325(b)'s limitation to plan confirmation lie. Nor does

§ 1325(b) necessarily apply to the "requirements of § 1325(a)" in the context of plan modification even with § 1325(a)'s cross-reference to § 1325(b) because §1325(b), by its terms, applies only to confirmation.

The Trustee also argues that § 1325(b) applies to plan modification because § 1325(a)(1), the first of the nine requirements for plan confirmation, mandates that "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." 11 U.S.C. § 1325(a)(1). Section 1325(a)(1) clearly applies to plan modification because it is a "requirement of § 1325(a)." *See id.* § 1329(b)(1). But if § 1325(a)(1) then serves to apply the entirety of Chapter 13 to plan modification under § 1329, § 1329(b)(1)'s specification of the four provisions that apply to plan modification would be redundant. *Davis*, 439 B.R. at 868 (citing *In re Forbes*, 215 B.R. 183, 191 (B.A.P. 8th Cir. 1997); *In re Hill*, 386 B.R. 670, 675 (Bankr. S.D. Ohio 2008)); *see also Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 574 (1995) (citing *United States v. Menasche*, 348 U.S. 528, 538-539 (1955)) (courts must "avoid a reading [of a statute] which renders some words altogether redundant."). And even if § 1325(a)(1) does apply the entirety of Chapter 13 to § 1329, § 1325(b), by its terms, applies only to plan confirmation and therefore has no bearing on plan modification.

The Trustee also directs the Court to *In re Heideker*, 455 B.R. 263 (Bankr. M.D. Fla. 2011), a case that considered whether the commitment-period provisions of § 1325(b)(4) must apply to plan modifications under § 1329. *Id.* at 264-65. The debtors in that case sought to modify their plans post-confirmation by reducing their commitment periods to less than the periods provided by § 1325(b)(4). *Id.* The *Heideker* Court pointed to *In re Tennyson*, 611 F.3d 873 (11th Cir. 2010), in which the Eleventh Circuit held that debtors who do not fully repay unsecured claims must pay their

disposable income for the duration of the entire three- or five-year commitment period. *Id.* at 880. The *Tennyson* Court rejected the alternate argument that the commitment periods were merely "multipliers" used to calculate projected disposable income by multiplying disposable income times either a three- or five-year period. *Id.* at 876.

Though the issue of plan modification was not directly before the *Tennyson* Court, the court did note that its interpretation of § 1325(b)(4) that required a minimum commitment period, when read in conjunction with the modification provisions of § 1329, supported Congress's intent in enacting BAPCPA to "to make sure that debtors repay creditors up to their maximum ability." *Id.* at 879. Both debtors and certain creditors can move to modify a plan under § 1329 upon changes in the debtors' financial circumstances, and 11 U.S.C. § 521(f) requires debtors to file with the bankruptcy court their tax returns, upon request, so that other parties in interest may be apprised of the debtors' financial situation. *See In re King*, 439 B.R. 129, 136 (Bankr. S.D. Ill. 2010). The *Tennyson* Court noted that allowing confirmation of a plan that is shorter than the minimum commitment period would deprive creditors of their ability to seek modification of the plan to increase payments if the debtor's financial situation improves several years down the line. *Tennyson*, 611 F.3d at 879.

The bankruptcy court in *Heideker*, upon considering modification under § 1329 that would reduce the commitment period below the minimum duration, determined that reading § 1329 to not incorporate § 1325(b)(4) would render meaningless the income-tax reporting requirements of § 521(f). *Heideker*, 455 B.R. at 271. But even if a debtor may, upon modification, reduce the commitment period below the durations set forth in § 1325(b)(4), that does not, by itself, render the reporting requirements of § 521(f) meaningless. Knowledge of the debtors' financial situation is

valuable to creditors who have the ability to modify the plan regardless of whether the commitment period retains its original duration upon confirmation or is subsequently shortened on modification. Nor does shortening of the commitment period divest a creditor of his ability to move for plan modification, including an extension of the shortened commitment period if necessary. *See* 11 U.S.C. § 1329(a)(2). Accordingly, the Trustee's arguments that § 1325(b) must apply to plan modification under § 1329 are unavailing, and the Bankruptcy Court did not err when it determined that Debtors could use the 2013 IRS standards when modifying their plan, instead of the 2009 standards in effect at the commencement of the case.

## *CONCLUSION*

For the reasons set forth above, it is **ORDERED and ADJUDGED** that the Bankruptcy Court's Order Sustaining in Part Trustee's Objection and Denying Without Prejudice Debtors' Motion to Modify, Order Denying Debtors' Motion to Modify Plan and Dismissing Chapter 13 Case, and Order Denying as Moot Motion to Clarify are **AFFIRMED.** The Clerk is directed to **CLOSE** this matter.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 8th day of May 2014.

/s/ Robin S. Rosenbaum
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record